IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| SIDNEY EUGENE TRAHAN | § | |
| VS. | § | CIVIL ACTION NO. 1:07cv733 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM OPINION</u>

Petitioner Sidney Eugene Trahan, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

<u>Factual Background and Prior Proceedings</u>

In 2004, following a jury trial, petitioner was convicted of sexual assault in the 260th District Court of Orange County, Texas. *The State of Texas v. Sidney Eugene Trahan*, cause no. D020436. He was sentenced to life imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Ninth District in an unpublished opinion. *Trahan v. State*, No. 09-04-216-CR. The Texas Court of Criminal Appeals denied a petition for discretionary review. *Trahan v. State*, No. PD-1240-05.

Petitioner subsequently filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. *Ex parte Trahan*, Appl. No. 67,067-01.

## Grounds for Review

Petitioner asserts the following grounds for review: (a) the prosecution did not file its Notice of Intent to Enhance Punishment in a timely fashion; (b) the prosecution deliberately misled the jury as to the contents of an exhibit; (c) he was denied the right to a trial before an unbiased jury; and (d) he was not provided adequate time to question the jury panel. He also asserts he received ineffective assistance of counsel because counsel: (1) failed to challenge the untimely filing of the Notice of Intent to Enhance Punishment; (2) allowed the prosecution to used a probated sentence for enhancement purposes; (3) allowed the prosecution to mislead the jury as to the contents of an exhibit; (4) failed to seek an expert witness; (5) permitted the prosecution to engage in bolstering; (6) failed to request jury instruction regarding lesser included offenses; and (7) failed to challenge a member of the jury panel and preserve issues of bias and denial of adequate time to question the jury panel.

## Standard of Review

When a federal district court reviews a habeas petition filed pursuant to 28 U.S.C. § 2254, it must defer to the determination of state courts in any case adjudicated on the merits in state court proceedings.[1] *Robertson v. Cain*, 324 F.3d

---

[1] In petitioner's case, the Court of Criminal Appeals denied his application for writ of habeas corpus on the findings of the trial court without a hearing. Under Texas law, the denial of relief by the Court of Criminal Appeals constitutes a denial of relief on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000).

297, 301 (5th Cir. 2003). A federal court may only overturn a state court's determination as to a question of law or a mixed question of law and fact if that determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As used in subsection (d)(1) of Section 2254, the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to holdings of the Supreme Court rather than mere dicta. *Williams v. Taylor*, 529 U.S. 362 (2000). Further, a decision is contrary to clearly established federal law if the state court: (a) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or (b) decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id*. A decision involves an unreasonable application of clearly established federal law if the state court identified the correct legal principle, but unreasonably applied the principle to the petitioner's case. *Id*. A federal habeas court may not grant relief merely because it believes the state court applied clearly established federal law incorrectly or erroneously. Instead, the court must conclude the state court's application of clearly established federal law was unreasonable. *Id*.

In addition, 28 U.S.C. § 2254(d)(2) instructs federal court to "give deference to the state court's [factual] findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."' *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by a state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Factual Background

The intermediate appellate court summarized the facts surrounding this case as follows:

> The complainant, SS, a sixteen year old mentally handi-capped female, testified at trial. She confirmed Trahan came in her room one morning, pulled his pants down, and "sexed her." She told him to stop. He stopped when her brother, Billy, opened the door and looked in. SS in-dicated she and Trahan were under the covers; he was on top of her, and he put his sexual organ inside of her. SS testified she "was scared."
>
> Billy testified at trial. He acknowledged he had been convicted of six felonies, admitted he smoked mari-juana in the home, and was incarcerated at the time of trial. On the morning of the alleged offense, seven-teen year old Billy went to check on then fourteen year old SS when he did not find her watching car-toons in the living room. Opening her bedroom door, Billy saw Trahan "under the covers on top of [SS]; and [Trahan] froze up when [Billy] walked in. Billy testified that although he could not see what was going on under the covers, he could tell Trahan was lying on top of SS with his waist between her legs. Believing Trahan was sexually assaulting SS, Billy slammed the door and "went looking for [his] gun[,]" because, as he explained, "I was going to kill him." Billy's girlfriend, Theresa, testified Billy "was trembling with anger [and] fear" after coming from SS's bedroom. Billy told Theresa to check on SS.

4

Theresa indicated when she went to the bedroom, she
found SS on the bed under the covers.  Sitting on the
side of the bed, Trahan was wearing shorts and a shirt
and had no shoes on.  "He had his hand in the back of
him like he was rubbing on her leg maybe."  "It looked
like it was on her inner thigh."  Theresa observed
Trahan take his hand off SS.  On cross-examination, she
acknowledged he could have been scratching his back.
Theresa testified Trahan was "shocked, like maybe
suprised[,]" and SS "looked nervous."

Billy talked to SS and called the police after she told
him Trahan had sex with her.  Theresa testified she
tried to comfort SS after Trahan left.  SS was crying and
told Theresa "[h]e had sex with me, Resa."  He exact
words were "[h]e sexed me."  Theresa told police SS said
Trahan told her he would hurt her if she told anyone.

SS's mother testified Trahan had been staying at her
home.  That morning, her son Billy told her what he had
seen.  Billy was "very mad," "very upset" "[s]haking."
He was looking for the gun.  After the police were called,
SS's mother took SS to the hospital to be examined by
the "sexual assault nurse examiner."  The nurse testified
SS "was crying.  She was very upset, wasn't sure
exactly what was going on and what was going to happen."
The pelvic exam is the last exam the nurse performed;
visibly upset, SS would not allow the nurse to complete
the exam.  The nurse's notes state, SS "[c]ould not
tolerate pelvic exam and no trauma noted to external
area[.]"

The defense offered various defensive theories; sought
to impeach Billy's testimony, and point out incon-
sistencies in the testimony of the State's witnesses.
Two witnesses testified Trahan remained in the area
during May 2002.  The implication was that Trahan's
continued presence in the area supported the defense
theory of innocence.  Another defensive theory was
that the residents of the home feared Billy and tes-
tified to what he wanted.  Both Billy's mother and his
girlfriend indicated they had problems with Billy,
and acknowledged he was at times violent.  Theresa
indicated she was afraid of Billy; they had numerous
fights; and she thought he was crazy.  The mother in-
dicated Billy was not always truthful.

<u>Analysis;</u>

*Untimely Filing of Notice of Intent to Enhance Punishment*

Petitioner asserts the prosecution only filed its Notice of Intent to Enhance Punishment three days prior to trial. He states this was insufficient to provide him with timely prior notice.

Petitioner's trial began on February 16, 2004, a Monday. The Notice of Intent to Enhance Punishment was filed on February 13, the preceding Friday. The notice stated the prosecution intended to enhance petitioner's punishment based on a 1999 conviction for molestation of a juvenile in the 14th Judicial District Court of Calcasieu Parish, Louisiana.

While the record demonstrates petitioner only received notice of the prosecution's intent to enhance punishment shortly before trial, petitioner has made no attempt to show how the relatively short notice caused him to suffer prejudice. Petitioner does not state that he was not convicted of the charge described in the notice. Nor does he attempt to show what evidence he could have produced to demonstrate he was not convicted of the charge if he had known of the prosecution's intent to use the charge sooner. As petitioner has failed to demonstrate that only providing him with three days notice of the intent to use a prior conviction to enhance punishment caused him prejudice, this ground for review is without merit.

6

*Deliberately Misleading the Jury*

The prosecution's Exhibit 9 was a document provided to the prosecution by the Louisiana State Police. The document stated that on October 22, 1999, petitioner was convicted of molestation of a juvenile in Lake Charles, Louisiana, and placed on probation. The document also states that on May 4, 2001, his placement on probation was revoked.

Petitioner asserts the prosecutor acted improperly by alleging that the document was the functional equivalent of a Texas state judgment and sentence.

During the punishment phase of the trial, the following exchange occurred between Lynn Arceneaux, a sergeant with the Orange Police Department, and the prosecutor:

> Q. I'll show you what's been marked as Exhibit No. 9. Can you identify that?
>
> A. Yes, sir, I can.
>
> Q. What is it?
>
> A. It's a packet of information. It also contains finger-prints.
>
> Q. Okay. So, it contains a set of fingerprints. Were those prints made by Sidney E. Trahan who was convicted of molestation of a juvenile in the 14th Judicial District Court of Calcasieu Parish, Louisiana?
>
> A. That's what it says on here, yes, sir.
>
> Q. And have you compared the defendant's inked prints in State's Exhibit No. 8 with the inked fingerprints in the judgment of State's Exhibit No. 9?
>
> A. Yes, sir, I have.
>
> Q. Do you have an opinion as to whether or not the finger-prints were made by the same individual?

7

A. Yes, sir, I do.

Q. What is that opinion?

A. That those prints are made by the same individual.

The review of a claim of prosecutorial misconduct is narrow in scope. The court must determine whether the alleged misconduct was so prejudicial as to render the trial fundamentally unfair in violation of the due process clause. *See Greer v. Miller*, 483 U.S. 756 (1987); *Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000). "To constitute a due process violation, the prosecutorial misconduct must be of 'sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 757. A trial is deemed to be unfair where there is a reasonable probability that the verdict would have been different absent the misconduct. *Barrientes v. Johnson*, 221 F.3d at 753. Only in the most egregious situations, therefore, will a prosecutor's improper conduct violate constitutional rights. *Ortega v. McCotter*, 808 F.2d 406 (5th Cir. 1987).

The record shows that while the prosecutor did make a passing reference to Exhibit 9 containing a judgment, this appears to have been merely a somewhat loose use of language by the prosecutor rather than evidence of an intent to mislead the jury. The court notes that in his closing argument the prosecutor does not refer to Exhibit 9 as containing a judgment. As a result, the court is unwilling to conclude prosecutorial misconduct occurred.

Moreover, even if it could be concluded misconduct occurred, petitioner has not demonstrated the prosecutor's statement rendered his trial fundamentally unfair. There was no evidence in the record contesting the fact that petitioner was the individual convicted of molesting a juvenile. As a result, there is not a reasonable probability the result of the proceeding would have been different if the prosecutor has used a different word or if an objection to the use of the word "judgment" had been sustained. As a result, this ground for review is without merit.

*Denied Right to Trial Before Unbiased Jury*

Petitioner asserts Juror Hayes was biased because he was prepared to return a verdict of guilty even if the prosecution failed to prove every element of its case.

During *voir dire*, the following exchange took place:

Counsel: Now, he--Mr. Smith went over the elements of this offense. Now, let's just say there are five elements that he's got to show you. He shows you four of those elements. What would your verdict be?

Juror Cochran: You would need to know the fifth one.

Counsel: Does it matter the importance of the fifth one?

Juror Cochran: Yeah.

Counsel: Let's just say that on or about May 25th, in 2002, in Orange County, Sidney Trahan intentionally slapped someone. Let's just use those six. If he doesn't prove that it's Orange County, what would your verdict be?

Juror Cochran: Not guilty because it wouldn't be the right place.

Counsel: If he didn't prove the on or about date, what would your answer be?

> Juror Cochran: He would be not guilty.
>
> Counsel: So, none of those elements are any more or less important than the others?
>
> Juror Cochran: Right.
>
> Counsel: Is that right?
>
> Juror Cochran: It takes all of them.
>
> Counsel: Mr. Hayes, what do you think about that?
>
> Juror Hayes: I guess I'd have to know specifically what you just described; but I think some elements do carry more weight. For example, if you can prove there was a person that did slap that person, then that might be enough if that's what the person is being accused of. If I have proof, where it happened may not be as big a factor as those elements, and I'm just hypothesizing.
>
> Counsel: So if he doesn't prove beyond a reasonable doubt from the witness stand what County this happened in, then you could still find the person guilty?
>
> Juror Hayes: I guess it would depend on everything else I heard, you would think you would know where something happened.
>
> Counsel: Well, if he doesn't prove that a slap took place.
>
> Juror Hayes: That seems to be a critical piece of evidence.

A request by defense counsel that Juror Hayes be removed for cause was denied by the trial court. Petitioner contends this ruling was erroneous.

Refusal to grant a challenge for cause is within the discretion of the trial court and provides no basis for habeas corpus relief "unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial." *Sudds v. Maggio*, 696 F.2d 415, 416 (5th Cir. 1983);

10

*Passman v. Blackburn*, 652 F.2d 559 (5th Cir. 1981), *cert. denied*, 455 U.S. 1022 (1982).

After reviewing the record of the *voir dire* in this matter, the court is unable to conclude that the failure to remove Juror Hayes for cause deprived the petitioner of a fair trial. While Juror Hayes did indicate he might consider what might be referred to as the "action" element of the crime to be more important than the venue element of the crime, he never stated he could render a verdict of guilty if the prosecution failed to establish the venue element beyond a reasonable doubt. As a result, it cannot be concluded that the statement of Juror Hayes was so disqualifying as to render the trial fundamentally unfair because he was not removed for cause.

*Denial of Adequate Time to Question Jury Panel*

Petitioner states that while counsel was attempting to address a question from a panel member concerning a defendant's failure to testify, counsel ran out of time and requested additional time. He states the failure to grant additional time was error.

At the end of the *voir dire* portion of the trial, the following exchange took place:

> Juror Cormier: I have one more thing to say. On re-iteration of what was said earlier about if the defendant didn't stand up and say–
>
> Counsel: I'm sorry?
>
> Juror Cormier: If the defendant didn't stand up and get up and tell his side of the story, I wouldn't hold that against him; but in my mind I would think if he is the

11

> defendant and he is innocent, they why doesn't he want--
> you see what I'm getting at--why wouldn't he want to say
> this is what happened?
>
> Counsel: Can you think of any reason why a person would
> not want to take the stand?
>
> Juror Cochran: If someone was innocent, why wouldn't they
> want to get up and tell their story if they have nothing to
> hide and they're innocent?
>
> Counsel: Well, some people may think that if he gets
> up and say something that he may beat the case or that-
>
> The court: Ms. Rogers, you're out of time.
>
> Counsel: Can I--can I have five more minutes?
>
> The court: No.  If you'll just have a seat.

The court removed Juror Cochran for cause.  Petitioner asserts that the trial court's failure to grant additional time prevented counsel from obtaining information from other jurors concerning their feelings about a defendant's right to not take the stand in his own defense.

The conduct of *voir dire* is "left to the broad discretion of the trial judge, and the exercise of that discretion is limited by 'the essential demands of fairness." *Knox v. Collins*, 928 F.2d 657, 661 (5th Cir. 1991).

After examining the record, the court is unable to conclude that the failure to grant defense counsel additional time during *voir dire* rendered petitioner's trial unfair.  Petitioner's contention that additional questions might have revealed additional juror bias is wholly speculative.  Moreover, with respect to a defendant's right against self-incrimination, the court instructed the jury that petitioner's failure to take the

stand could not be held against him.  As a result, this ground for review is without merit.

*Ineffective Assistance of Counsel*

A. <u>Legal Standard</u>

A claim of ineffective assistance of counsel is reviewed under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  "First, a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance."  *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992)(quoting *Strickland*, 466 U.S. at 688).  Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test.  *See Strickland*, 466 U.S. at 687-97.

In reviewing an ineffective assistance of counsel claim, the court must judge the conduct of defense counsel according to the objective standard of the reasonable attorney, *Kyles v. Whitley*, 5 F.3d 806 (5th Cir. 1993), and "give great deference to counsel's assistance, strongly presuming that counsel has

13

exercised reasonable professional judgment." *Ricaldy v. Procunier*, 736 F.2d 203, 206 (5th Cir. 1984).

    B. <u>Application</u>

    1. <u>Failure to Challenge Filing of Notice of Intent to Enhance Punishment</u>

As stated above, the prosecution did not inform the defense of its intention to enhance the applicable punishment until three days prior to trial. Petitioner asserts counsel was ineffective for failing to object to what he considers to be the late notice.

As previously stated, petitioner has made no attempt to demonstrate how having additional time to prepare would have enabled him to establish he was not convicted of the offense set forth in the Notice of Intent to Enhance Punishment. As a result, it cannot be concluded that counsel's failure to object to the notice as being untimely filed and request a continuance to obtain evidence caused petitioner to suffer prejudice.

    2. <u>Failure to Object to Use of Probated Sentence</u>

As described above, petitioner was originally placed on probation as a result of the conviction described in the Notice of Intent to Enhance Punishment. Petitioner contends counsel was ineffective for failing to object to the use of this conviction because a conviction which results in a probated sentence is not final under Texas law for enhancement purposes.

Petitioner is mistaken. As the intermediate appellate court stated, Section 12.42 of the Texas Penal Code provides that a life sentence must be imposed if a defendant convicted of sexual

14

assault was "previously convicted" of an offense under another state's law containing elements that are substantially similar to the elements of indecency with a child, sexual assault or aggravated sexual assault.  Section 12.42(g) provides that a person is considered "previously convicted" even if he was placed on regular probation as the result of the prior conviction, whether or not the probation was successfully completed.  The use of the prior conviction, even thought it resulted in a probated sentence, was therefore not improper.  As a result, counsel was not ineffective for failing to object to the use of the prior conviction for enhancement purposes and petitioner suffered no prejudice as a result of counsel's failure to object.

    3.  <u>Failure to Object to Misleading of Jury</u>

As also stated above, petitioner states the prosecutor improperly tried to deceive the jury into believing that the exhibit introduced to support the contention that petitioner had a prior conviction was the equivalent of a Texas state judgment and sentence.  As previously stated, the prosecutor's passing reference to a "judgment" did not rise to the level of misconduct and did not cause petitioner to suffer prejudice.  As no prejudice was suffered, counsel was not ineffective for failing to object to the prosecutor's statement.

    4.  <u>Failure to Hire Expert Witness</u>

Petitioner also states counsel was ineffective for failing to hire an expert to testify as to the effect retardation might have had on the testimony of the victim of the assault.

15

Complaints regarding uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Bray v. Quarterman*, 265 Fed.Appx. 296 (5th Cir. 2008). As a result, in order to prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id.* (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). Such a showing must be made for expert as well as lay witnesses. *Evans v. Cockrell*, 385 F.3d 370 (5th Cir. 2002) (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated); *United States v. Dublin*, 54 Fed.Appx. 410 (5th Cir. 2002).

In this case, petitioner has not submitted to name of an expert who would have been willing to testify at trial. Nor has he stated in any detail what testimony any particular expert would have been prepared to offer at trial. As a result, this ground for review is without merit.

5. <u>Failure to Object to Bolstering</u>

At trial, the prosecutor asked Theresa, Billy's girlfriend, whether, based on what she saw and heard, she had any doubt as to whether petitioner had sex with the victim. She said she had no doubts. The prosecutor also asked the victim's mother whether

16

she believed the victim's statement to her about what happened. She was also asked whether she believed petitioner had sex with the victim. She gave affirmative replies to both questions.

"Bolstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party." *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex.Crim.App. 1993) (citing *Guerra v. State*, 771 S.W.2d 474 (Tex.Crim.App. 1988)). State courts define bolstering as "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit" when the credibility of that witness or source has not been attacked. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex.Crim.Ap. 1993) (emphasis in original).

As the respondent points out, the question asked of Theresa did not constitute bolstering as it was intended to elicit her conclusion as to what happened on the date of the assault rather than an attempt to have Theresa opine as to whether she believed the victim testified truthfully at trial. Further, the questions asked of the victim's mother were not bolstering because they were intended to rehabilitate testimony from Billy that the prosecution had attempted to impeach. As the questions cited by petitioner did not constitute improper bolstering, counsel was not ineffective for failing to object to the questions. Moreover, even if the questions did constitute bolstering, the court is unable to conclude petitioner suffered prejudice because counsel failed to object to the questions.

17

6. <u>Failure to Request Instruction Regarding Lesser-Included Offense</u>

Petitioner also states counsel was ineffective for failing to request a jury instruction regarding lesser included offenses. He states the jury should have been told it could convict petitioner of indecency with a child or attempted sexual assault, rather than sexual assault.

In this case, counsel may well have concluded that in light of the evidence, the jury might be unwilling to convict petitioner of the offense charged, resulting in a complete acquittal. As a result, counsel might have been reluctant to provide the jury with a lesser included offense on which they could base a compromise verdict and instead concluded petitioner's chances were better if the jury was required to either convict of acquit based solely on the offense charged. In light of the great deference afforded decisions regarding trial strategy, the court is unable to conclude counsel's failure to request a jury instruction regarding lesser included offenses fell below an objective standard of reasonableness.

7. <u>Failures with Respect to *Voir Dire*</u>

As described above, petitioner contends the trial court erred by failing to remove a juror for cause and by failing to grant defense counsel additional time to question the jury panel. He states counsel was ineffective because she failed to properly preserve these issues for appeal.

As also described above, counsel attempted to have the juror removed for cause and requested additional time to question the panel. It is not clear from the record that counsel failed to properly preserve these issues for appeal. Moreover, the court previously concluded petitioner suffered no prejudice because the juror was not removed for cause and no additional time was granted to question the panel. As no prejudice was suffered, counsel was not ineffective for failing to take additional steps to preserve these issues for appeal.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit and will be denied. An appropriate final judgment shall be entered.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability. An appeal from a judgment denying federal habeas relief may not proceed unless a a certificate of appealability is issued. *See* 28 U.S.C. § 2253. The standard for a certificate of appealability requires the petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Elizalde v. Dretke*, 362 F.3d 323 (5th Cir. 2004). To make a substantial showing, the petitioner need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to

19

proceed further. *See Slack*, 529 U.S. at 483-484. Any doubts regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner. *See Miller v. Johnson* 200 F.3d 272 (5th Cir. 2000).

In this case, petitioner has not shown that any of the issues he raises are subject to debate among jurists of reason. The factual and legal questions asserted by petitioner are not novel and have been consistently resolved adversely to his position. In addition, the issues raised are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not issue in this matter.

**SIGNED** this the **30** day of **March, 2011.**

_____
Thad Heartfield
United States District Judge